UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NEAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-800-AGF |
| | ) | |
| CRAVEN PERFORMANCE & | ) | |
| OFF-ROAD, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

The matter is before the Court on the motion (Doc. No. 9) of Plaintiff Neal Technologies, Inc. ("NTI"), for default judgment. NTI, a manufacturer and seller of diesel truck parts based in Arizona, brings this action alleging trademark infringement, unfair competition, false designation of origin, and false descriptions in violation of the Lanham Act, 15 U.S.C. 1051, et seq. (Counts I and II). NTI also brings a count of unfair competition under Missouri common law (Count III).

NTI alleges that Defendant Craven Performance & Off-Road, LLC ("Craven"), is a Missouri limited liability company with a principal place of business in St. Charles, Missouri. (Doc. No. 1 at 1.) NTI asserts that Craven infringed upon NTI's trademarks in its use of the terms "Bulletproof" and "Bombproof" to market and advertise diesel engine products. (Doc. No. 1 at 5.)

NTI filed suit on May 19, 2015, alleging the above-mentioned violations of the Lanham Act and state common law. NTI hired a process server and filed an executed

summons on June 11, 2015, which reflects a service date of May 26, 2015. (Doc. No. 5.) The process server's affidavit stated that Benjamin Craven, the purported owner and registered agent of Craven, was served with NTI's Complaint at his home in St. Charles, Missouri. *Id.* Craven has never filed an answer or other responsive pleading. On July 2, 2015, NTI moved for a clerk's entry of default, and on July 7, 2015, a clerk's entry of default was entered against Craven. (Doc. Nos. 6, 7.) NTI filed the instant motion for default judgment, with supporting memorandum and documentation, on August 19, 2015. (Doc. No. 9.) On November 18, 2015, the Court entered an Order to Show Cause why default judgment should not be entered. A copy of the Order was served on Craven at the address noted in the file. (Doc. No. 10.) Craven did not respond to the Order to Show Cause. Upon consideration of the record and the applicable law, the Court will enter default judgment against Craven.

## **Factual Allegations**

NTI designs, manufactures, markets, advertises, distributes, and sells "aftermarket diesel truck parts and related services," including oil coolers used in certain engines. (Doc. No. 1 at 2.) Since as early as 2008, and for at least six years, NTI marketed these goods using the "BULLET PROOF DIESEL" name. *Id.* at 1-2. NTI also used the mark BulletProofDiesel.com, and obtained U.S. Registration No. 4,235,578 on November 6, 2012. (Doc. No. 1-1.) A corresponding design mark was registered December 25, 2012, and assigned the number 4,262,825. (Doc. No. 1-2.) NTI has utilized these marks on its website, on social media, and in national media advertisements. (Doc. No. 1 at 3-4.)

NTI alleges that Craven is a competitor company which "customizes, repairs and modifies cars and trucks," and in the course of its business, sells diesel engine part "packages" labeled "Bulletproof Package Parts" and "Powerstroke Bulletproof Packages." *Id.* at 4. Craven also classifies its diesel engine packages using the titles: "Level 1 Bulletproof," "Level 2 Bulletproof," "Level 3 Bulletproof," and "Extreme Performance Bulletproof." *Id.* These packages allegedly include some (but are not entirely composed of) parts manufactured and sold by NTI. *Id.* NTI alleges that Craven advertises its packages, making prominent use of NTI's allegedly trademarked term, on its website and on social media. *Id.* at 5. Thus, NTI alleges that Craven used marks owned by NTI in conjunction with the sale and advertisement of directly competing goods and services. (Doc. No. 9 at 2.) NTI further alleges that Craven's use of the allegedly trademarked terms is likely to create the false impression that Craven's goods or services come from the same source as the goods and services sold by NTI, and to otherwise create consumer confusion. (Doc. No. 1 at 6.) NTI also alleges that Craven's actions were and are willful. (Doc. No. 1 at 8.)

NTI's counsel sent multiple cease and desist letters to Craven's owner, including on February 17, 2015, and on March 5, 2015, but never received a response. *Id.* at 5-6. Following these letters from NTI, Craven changed the text of its website, which formerly read "Home of the Bulletproof Powerstroke," to read "Home of the Bombproof Powerstroke." (Doc. No. 9 at 4.) However, NTI alleges that this change "did not cure the infringement," and that Craven's terminology continues to violate its trademarks by

causing customer confusion. *Id.* NTI further explains that Craven continues to use the term "bulletproof" on social media. *Id.* NTI seeks an injunction prohibiting Craven's future use of the term or confusingly similar variations thereof, as well as attorneys' fees.

## Standard for Default Judgment

Where default has been entered, the allegations of the complaint are taken as true, except as to the amount of damages, and "the defendant has no further standing to contest the merits of the plaintiff's right to recover." *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). It then "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).

## Discussion

NTI's federal trademark infringement claim (Count I) requires NTI to demonstrate that (1) it owns a valid and legally protectable mark, and (2) there is a likelihood of confusion between its mark and Defendant's mark. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009); *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011). An unregistered trademark is valid and protectable if it is inherently distinctive or has acquired a secondary meaning through "long and exclusive use in the sale of the user's goods [such that] the mark . . . serves to identify the source of the goods and to distinguish them from those of others." *B&B Hardware, Inc.*, 569 F.3d at 389 (internal citation omitted); *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994).

4

Registration of a trademark is "prima facie evidence of a registrant's exclusive right to use the registered mark in commerce." *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 883 (8th Cir. 2014) (quoting 15 U.S.C. § 1115(a)). Under the Lanham Act, "[a] 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. "It may be presumed that counterfeiting another's mark creates a likelihood of confusion." *George & Co., LLC v. Xavier Enters., Inc.*, No. 09-2973 (DWF/RLE), 2009 U.S. Dist. LEXIS 112902, at *12 (D. Minn. Dec. 4, 2009); *see also Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004).

NTI alleges that it owns the terms "BULLET PROOF DIESEL" and "BulletProofDiesel.com" with regard to the advertisement and sale of diesel truck parts, and that Craven's use of similar terms to market its own products is likely to cause customer confusion. The Court agrees that "BULLET PROOF DIESEL" and "BulletProofDiesel.com" are valid and legally protectable marks, and that Craven's use of the nearly identical term "Bulletproof" in its own advertising creates a likelihood of confusion. Accordingly, the Court will enter judgment on Count I.

In Count II, NTI alleges additional violations under § 43(a) of the Lanham Act: False Designation of Origin and False Descriptions. 15 U.S.C. § 1125(a). The Eighth Circuit has explained that "[a]n owner of a mark is entitled to injunctive relief if the use of that mark violates either prohibition [false designations or other false representations] and causes a likelihood of confusion among consumers." *Co-Rect Prods., Inc. v. Marvy!*

*Advert. Photography, Inc.*, 780 F.2d 1324, 1329-30 (8th Cir. 1985). "The key to finding a violation under section 43(a) is a determination that the materials used by the defendant created a likelihood of confusion, deception or mistake on the part of the consuming public." *Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 714 (8th Cir. 1980). Elsewhere, the Eighth Circuit has elaborated that a false statement constituting a Lanham Act violation requires the following:

> a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir. 1998).

As noted above, NTI alleges that Craven's use of the term "Bulletproof" in its marketing deceptively suggests that all merchandise in Craven's "packages" was manufactured by NTI, when in fact, only certain components may have been manufactured by NTI, and NTI did not endorse or manufacture the packages as sold by Craven. NTI alleges that because the relevant public audience associates the terms and marks at issue with NTI, Craven's behavior is a material deception. NTI further alleges that Craven used such deceptive practices in interstate commerce, and caused damage to NTI in the form of loss of income, impairment of NTI's goodwill in its marks, and confusion in the marketplace. Again, Craven has failed to appear in this case and

therefore concedes NTI's allegations.  Based on these uncontested allegations of fact, the Court finds that Craven has stated a legitimate violation under 15 U.S.C. § 1115(a), and will enter judgment on Count II.

Count III of NTI's Complaint alleges Unfair Competition in violation of Missouri common law.  The "same facts which support a suit for trademark infringement support a suit for unfair competition and common law infringement" under Missouri law.  *Cmty. of Christ Copyright Corp.*, 634 F.3d at 1010 (citations and internal quotation marks omitted).  Thus, the Court will also enter judgment on this count.

## **Permanent Injunction**

The Lanham Act permits courts to enter permanent injunctive relief to prevent future trademark infringement.  15 U.S.C. § 1116.  "To obtain a permanent injunction, [Plaintiff is] required to show: (1) its actual success on the merits; (2) that it faces irreparable harm; (3) that the harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest."  *Cmty. of Christ Copyright Corp.*, 634 F.3d at 1012.  The public interest is served in preserving intellectual property rights.  *West Coast Prods. v. Garrett*, No. 4:12CV01551 AGF, 2014 U.S. Dist. LEXIS 23236, at *11 (E.D. Mo. Feb. 25, 2014).

"[I]n trademark law, injury is presumed once a likelihood of confusion has been established."  *Cmty. of Christ Copyright Corp.*, 634 F.3d at 1012.  Craven's use of the term "Bulletproof," is likely to cause confusion given that it is essentially a direct imitation of NTI's mark; therefore, the Court will enter an injunction prohibiting

7

Craven's use of that term or any confusingly similar variants. However, NTI has also asked the Court to enjoin Craven from use of the term "Bombproof." The Court must analyze this term to determine whether it is likely to cause confusion as used by Craven.

The Court conducts an analysis set forth in *SquirtCo v. Seven–Up Co.,* 628 F.2d 1086 (8th Cir. 1980), to determine whether the use of a particular mark is likely to cause confusion. The factors are (1) similarity of the marks; (2) the degree to which the products compete with each other; (3) classes of, and degree of care likely to be exercised by, prospective purchasers; (4) evidence of actual confusion; (5) defendant's intent in adopting the mark; and (6) the strength of plaintiff's mark. *Id.* at 1091; *see also Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.*, 758 F. Supp. 512, 522-23 (E.D. Mo. 1991) *aff'd*, 989 F.2d 985 (8th Cir. 1993).

Numerous factors may be weighed in determining whether there is a likelihood of confusion and no one factor is dispositive in reaching that conclusion. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500 (8th Cir. 1987). Here, the Court finds that Craven's use of "Bombproof" is sufficiently likely to cause confusion to warrant an injunction against the use of both "Bulletproof" and "Bombproof." "Bombproof" sounds similar to the trademarked "BULLET PROOF," and their shared suffix suggests a relationship between the products. They share very similar meanings. Moreover, accepting the facts as pled by NTI, NTI and Craven are competitors and sell similar products (and in fact, Craven includes some NTI components in its resale packages). Therefore, use of the "Bombproof" mark with very similar and competing products as

those bearing NTI's "BULLET PROOF" mark enhances the likelihood of customer confusion. While NTI has not offered evidence of actual confusion, the Court will nonetheless conclude that confusion amongst customers is likely. Therefore, the Court will grant an injunction prohibiting Craven's use of the term "Bombproof" as well as "Bulletproof."

The Court concludes, particularly in light of Craven's failure to answer or otherwise respond, that Craven's infringement has irreparably harmed NTI and will continue to irreparably harm NTI; the harm to NTI from the infringement outweighs any potential harm to Craven from enjoining Craven's infringing activities; and the public interest in preserving intellectual property rights will be served by an injunction. Therefore, NTI has established its right to a permanent injunction.

### Damages and Attorneys' Fees

Although NTI requested actual damages in its initial Complaint, it has not renewed that request in its Motion for Default Judgment or the accompanying Proposed Order (Doc. No. 9-1). NTI also has not submitted any evidence specifying alleged profits from Craven's infringement from which the Court might endeavor to calculate actual damages. Therefore, the Court will assume NTI no longer seeks actual damages. However, NTI does ask for attorneys' fees in addition to injunctive relief. (Doc. No. 9 at 6-7.) NTI has alleged that Craven's infringements are willful, and has offered in support its allegation that Craven modified its usage of NTI's marks (yet nonetheless continued infringement) even after NTI sent cease and desist letters. The Lanham Act allows for

reasonable attorneys' fees in exceptional cases. 15 U.S.C. §1117(a); s*ee also Metric & Multistandard Components Corp.*, 635 F.2d at 716 ("In view of the trial court's finding that the unlawful conduct . . . was willful and deliberate, the court may well determine that this is the type of 'exceptional' case for which an award of attorney's fees is appropriate.") Because NTI has alleged, and the Court will accept as true, that Craven's infringement was willful, the Court will also award reasonable attorney's fees in an amount to be established by subsequent proof submitted by NTI.

## Conclusion

Upon review of the record, including Plaintiff's proposed injunction and order,

**IT IS HEREBY ORDERED** that Plaintiff's motion for entry of default judgment is **GRANTED**. (Doc. No. 9.)

**IT IS FURTHER ORDERED** that, for purposes of this Order, the term "NTI Marks" shall mean and refer to (1) the BULLET PROOF DIESEL trademark and service mark; (2) the BulletProofDiesel.com mark (U.S. Registration No. 4,235,578, dated November 6, 2012); and (3) the BulletProofDiesel.com and Design mark (U.S. Registration No. 4,262,825, dated December 25, 2012).

**IT IS FURTHER ORDERED** that a Permanent Injunction is entered in this case as follows:

Defendant and its officers, agents, servants, employees, attorneys, and all other persons acting in active concert or participation with any of them, are immediately and permanently **ENJOINED** from:

10

(1) using the NTI Marks, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of the NTI marks, including but not limited to "Bulletproof" or "Bombproof" (whether by themselves or as a component part of a mark), on or in connection with any goods or services or in connection with the promotion, advertisement, marketing, sale, offering for sale, manufacture, production, dissemination, or distribution of any automotive products or automotive services, including but not limited to aftermarket diesel truck parts and related services;

(2) processing, packaging, or transporting any product that is not a genuine product of NTI bearing any of the NTI Marks, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of the NTI Marks;

(3) using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act which can, or is likely to, lead members of the consuming public or trade to believe that Craven is associated with NTI or that any product or service manufactured, distributed, or sold by Craven is in any manner associated or connected with NTI, or is authorized, licensed, sponsored, or otherwise approved by NTI;

(4) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (3) above or taking any action that contributes to any of the activities referred to in subparagraphs (1) through (3) above, or any other activity that consists of or contributes to the sale of

counterfeit or infringing products or services bearing or promoted under any of the NTI Marks.

**IT IS FURTHER ORDERED** that no later than 21 days from the date of this Order, Craven shall remove all designations and marks that violate this Order from all of its marketing materials, including but not limited to any signage, stationary, brochures, invoices, advertising and promotional materials, clothing, packaging, labels, domain names, website pages, Facebook pages, Twitter accounts and other social media pages, owned or operated by Craven.

**IT IS FURTHER ORDERED** that this case is an exceptional case within the meaning of 15 U.S.C. §1117(a), in that Defendant has effectively conceded its conduct was willful. Accordingly, Plaintiff is entitled to an award of attorney's fees and shall submit an affidavit or declaration to the Court as to the amount of such fees, supported by appropriate documents, by January 29, 2015.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to and is hereby awarded its costs of suit.

**IT IS FURTHER ORDERED** that the Clerk of Court shall serve a copy of this Order on Defendant at the address reflected in the file.

A separate judgment of default shall accompany this Memorandum and Order. Dated this 31st day of December, 2015.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE